J-S46023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VINCENT THOMAS WALLACE | : | |
| | : | |
| Appellant | : | No. 841 WDA 2024 |

Appeal from the PCRA Order Entered June 26, 2024
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s):  CP-03-CR-0000270-2019

BEFORE:  LAZARUS, P.J., BOWES, J., and KING, J.

MEMORANDUM BY BOWES, J.:                          **FILED: MARCH 24, 2025**

Vincent Thomas Wallace appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

The facts underlying Appellant's convictions were previously set forth by this Court as follows:

> Early on the morning of March 3, 2019, at approximately 2:00 a.m., Appellant knocked on Victim's door in Ford City, Pennsylvania.  The two had known each other for a few months. They then walked to Appellant's [duplex] house several blocks away, to have some drinks and smoke marijuana.  Victim and Appellant each began drinking an alcoholic beverage called Twisted Tea while another man rolled them a marijuana cigarette. After a short time, they headed upstairs to Appellant's room ostensibly to smoke.
>
> Upon entering the room, Victim took a seat on the side of the bed, smoking and sipping the Twisted Tea.  Appellant walked in after her and remained standing.  After a short time, he forced himself upon her, pushing her back onto the bed.  He then penetrated her vagina with his penis through her leggings, made of a thin, stretchy material, under which Victim was not wearing anything.

He stopped to pull her pants off, when Victim began yelling loudly for him to stop. Appellant began having intercourse with her, this time placing his hands on her neck and choking her while engaged in the act. After removing his hands from her neck, he covered her face with a pillow, all the time continuing to have sex with her, and threatening her, telling her that she "wasn't going to get out alive." Victim's head was hanging over the edge of the bed and hitting the wall paneling while this was happening.

Appellant removed the pillow and continued removing articles of clothing from Victim as he had sex with her. She repeatedly asked him to stop and told him she wanted to go home. Brianna Hynes, sleeping over her friend's house [in the attached duplex], testified to hearing yelling and struggling through the wall over the course of a few hours. In total, Appellant had sex with Victim six times over the course of those hours, with various time periods between each assault, before growing tired. At that point, Victim pushed him off her, grabbed her things, and ran downstairs.

Victim dressed herself, left the house, and called Armstrong County Detective Frank Pitzer as she walked away from the residence. Detective Pitzer was Victim's arresting officer for a drug-related offense. Detective Pitzer told her to call 9-1-1, which she did, and the 9-1-1 operator told her to walk to the Ford City police station, where she then went and filed a report.

Following the police report, Victim went to the hospital, where she had a [Sexual Assault Nurse Examiner ("SANE")] test performed, commonly known as a "rape kit." DNA evidence was collected over the course of the day, and pictures were taken of Victim. She gave a supplemental statement and had more pictures taken on March 5, 2019, two days after the assault.

*Commonwealth v. Wallace*, 268 A.3d 449, 2021 WL 5483176, at *1–2 (Pa.Super. 2021) (non-precedential decision) (cleaned up).

Appellant was charged and convicted by a jury of "six counts each of rape, sexual assault, and aggravated indecent assault, and one count each of strangulation, unlawful restraint, terroristic threats, and simple assault." *Id*. at *2 (cleaned up). The trial court sentenced him to an aggregate term of

incarceration of twelve to twenty-four years. Appellant filed post-sentence motions, which the court denied. On direct appeal, we affirmed his judgment of sentence.

Acting *pro se*, Appellant timely filed the underlying PCRA petition. The first two attorneys whom the PCRA court appointed both sought leave to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). The PCRA court granted their requests and ultimately appointed instant counsel, Lisa Peluso, Esquire, who filed an amended petition raising three claims of ineffective assistance of trial counsel. As is pertinent to the instant appeal, she alleged, *inter alia*, that counsel conducted inadequate cross-examination of Ms. Hynes and neglected to call as a witness Mr. Bell, who was present in the duplex during the sexual assault and was familiar with the relationship between Victim and Appellant. **See** Amended PCRA Petition, 4/18/24, at 3. The PCRA court held an evidentiary hearing, during which the court heard testimony from Appellant and his two trial attorneys, Tyler Heller, Esquire, and Gregory Swank, Esquire, the latter of whom acted as lead counsel. Bell did not testify at the hearing. As will be discussed at length *infra*, Appellant's trial attorneys explained their reservations around calling Mr. Bell as a witness at trial, as well as the strategy surrounding Ms. Hynes's cross-examination. After taking the matter under advisement, the court denied Appellant's petition.

This appeal followed. Although not ordered to do so, Appellant filed a Pa.R.A.P. 1925(b) concise statement. In lieu of a new Rule 1925(a) opinion, the PCRA court referred us to its June 26, 2024 opinion, which accompanied its order denying Appellant's petition. Appellant presents the following issues for our consideration:

  I. Whether the [PCRA] court erred in denying the PCRA petition and finding trial counsel was not ineffective where Appellant's trial counsel failed to interview and call proper witnesses, in particular [Mr.] Bell?

  II. Whether the [PCRA] court erred in denying the PCRA petition where trial counsel was ineffective for failing to properly cross-examine witnesses, in particular [Ms.] Hynes?

Appellant's brief at 7 (cleaned up).

We begin with the pertinent principles governing our review:

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

***Commonwealth v. Selenski***, 228 A.3d 8, 15 (Pa.Super. 2020) (cleaned up).

Both of Appellant's challenges implicate the effectiveness of trial counsel. In reviewing such claims, we begin with the presumption that counsel was effective. ***Id***. To prove otherwise, a petitioner must establish

- 4 -

three things: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error." *Id*. (cleaned up). Failure to prove any one of these prongs is fatal. *Id*.

Appellant first argues that the PCRA court erred in concluding that trial counsel was not ineffective for failing to call Mr. Bell as a witness. *See* Appellant's brief at 14-15. In this vein, our High Court has observed:

> To satisfy the arguable merit prong for a claim of ineffectiveness based upon trial counsel's failure to call an expert witness, the petitioner must prove that an expert witness was willing and available to testify on the subject of the testimony at trial, counsel knew or should have known about the witness and the defendant was prejudiced by the absence of the testimony. Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense.

*Commonwealth v. Williams*, 141 A.3d 440, 460 (Pa. 2016) (cleaned up). Moreover, we observe that the "failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." *Commonwealth v. Sneed*, 45 A.3d 1096, 1109 (Pa. 2012) (cleaned up).

On appeal, Appellant maintains that Mr. Bell was able and willing to testify to Victim's actions and her relationship with Appellant, "both before and

after the alleged rape," and that this testimony "would have been critical to [Appellant]'s defense as [it] showed a victim who willingly subjected herself repeatedly to the company of [Appellant] and voluntarily had sexual encounters with him at least in the past[.]" Appellant's brief at 15.

The PCRA court found that Appellant had failed to establish that counsel lacked a strategic reasonable basis for not calling Mr. Bell. Specifically, it credited the testimony proffered by Appellant's trial attorneys, both of whom "had serious doubts" regarding Mr. Bell "and assessed the likelihood that his testimony would be unfavorable to the defense. Their decision to forego calling . . . [him] as a witness was reasonable, given the potential harm that could result by doing so." PCRA Court Opinion, 6/26/24, at 4-5.

This Court's finding is supported by the record. During the PCRA hearing, Attorney Heller testified that he and Attorney Swank had investigated Mr. Bell because they considered calling him as a witness, but as trial approached, he no longer wanted to be involved and they had difficulty locating him. *See* N.T. PCRA Hearing, 6/18/24, at 11. Attorney Swank clarified that when they interviewed Mr. Bell he was "very glib[,]" providing one answer and then laughing and saying that "maybe he remembered something else." *Id*. at 24. Believing that he would harm and not help Appellant's case, Attorney Swank decided not to call Mr. Bell as a witness. *Id*. According to Appellant, Mr. Bell appeared at trial and Appellant told counsel that he wanted Mr. Bell to testify. However, by Appellant's own testimony,

Attorney Swank indicated that doing so would not be in Appellant's "best interest." *Id*. at 40-41.

Since Appellant failed to establish that his attorneys lacked a reasonable basis for declining to call Mr. Bell as a witness, we discern no error in the PCRA court's decision to reject this claim.

Appellant lastly contends that the PCRA court erred in denying his claim that trial counsel ineffectively cross-examined Ms. Hynes. *See* Appellant's brief at 15-16. He insists that the "scant questions" did not go to her potential bias. *Id*. at 16. According to Appellant, "counsel could have explored the relationship of the parties further and potential bias. Moreover, counsel could have elicited information that would have questioned the reliability of the witness[,] especially due to the very contradictory testimony of the other person present in the same location." *Id*.

Attorney Swank explained at the PCRA hearing that they cross-examined seventeen-year-old Ms. Hynes "with kid gloves" instead of attacking her memory and potentially "giv[ing] a sympathetic witness a chan[c]e to increase the certainty with which [she] saw or heard something." N.T. PCRA Hearing, 6/18/24, at 31. Rather, they decided to call as a defense Chrissy Bowser, an adult who was present in the same duplex as Ms. Hynes and who had told the attorneys prior to trial that she was awake late that evening and did not hear anything out of the ordinary. *Id*. at 27-28. Unfortunately, she testified for the first time at trial to having memory loss, and therefore her

testimony was not as strong as Appellant's attorneys had expected. *Id*. at 28, 31.

Once again, the PCRA court found that Appellant did not prove the reasonable basis prong of the ineffectiveness test. The court explained:

> Because [Attorney] Swank had anticipated that Ms. Bowser's testimony would be strong evidence that the incident did not occur, there was no reason to ask [Ms. Hynes] why she did not wake anyone up, or why she was the only person hearing the screaming. This was a reasonable strategic decision on trial counsel's part, and [Appellant]'s claim is therefore without merit.

PCRA Court Opinion, 6/26/24, at 6.

Our review of the certified record confirms that Attorney Swank focused during cross-examination on Ms. Hynes's inability to identify who she heard, where precisely the sounds came from, or when she heard it. Additionally, counsel had her confirm the other people present in the duplex with her at the time. *See* N.T. Jury Trial Volume I, 3/11/20, at 168-69. Attorney Swank then called Ms. Bowser, the mother of Ms. Hynes's friend who was also in the duplex at the time of the rape, as Appellant's first witness. Ms. Bowser testified that she was awake until approximately 4:00 a.m. on the night in question, and despite being able to hear through the walls dividing the duplex very easily, did not hear any screaming or crying that night. *See* N.T. Jury Trial Volume II, 3/12/20, at 313-15. Additionally, counsel elicited from Ms. Bowser that Ms. Hynes did not tell her in the morning that she had heard crying overnight. *Id*. at 316. On cross-examination, Ms. Bowser offered that she did not have

a good memory of the history when Appellant lived near her because she received electrical shock treatments to her brain two years before. *Id*. at 318.

While counsel could have chosen to more directly attack Ms. Hynes on cross-examination, Attorney Swank's decision to plant the seeds of doubt on cross-examination and then expand upon that uncertainty with Ms. Bowser's anticipated testimony was reasonable. "Trial counsel will not be deemed ineffective for pursuing a particular trial strategy so long as the chosen course was reasonable." ***Commonwealth v. Brown***, 161 A.3d 960, 966 (Pa.Super. 2017) (citation omitted and some capitalization altered). Based on the foregoing, we conclude that the record supports the PCRA court's decision that Appellant failed to prove that his trial attorneys lacked a strategic, reasonable basis for how they handled Ms. Hynes's testimony.

Accordingly, we affirm the PCRA court's order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/24/2025